

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

NDR:RCH
F. #2017R01784

January 24, 2020

By ECF

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Marina Golfo
                Criminal Docket No. 19-95 (KAM)

Dear Judge Matsumoto:

      The defendant Marina Golfo is a speech therapist who is charged in this case with public benefits theft and healthcare fraud. Specifically, in connection with the New York State Early Intervention Program ("EIP") – a public program designed to provide remedial services to developmentally delayed children – the defendant submitted fraudulent records and invoices relating to, and ultimately received payment for, non-existent therapy sessions with families of EIP-participating children.

      The government hereby moves in limine to preclude the defendant from arguing, eliciting on cross-examination or offering evidence at the trial: (i) that some therapy sessions provided by the defendant through the EIP and related billings were non-fraudulent; or (ii) that the sources of improper payments received by the defendant, namely, Medicaid, the New York City Department of Health and Mental Hygiene ("NYC DOHMH") and private insurance carriers, should not have paid for therapy sessions they did not believe were legitimate or properly billed or that, by paying claims submitted by the defendant, the victims led the defendant to believe her fraudulent practices were justified. In a recent and nearly identical case, the Honorably Sterling Johnson, Jr. granted these same motions in limine. See United States v. Mensah, 19 CR 60 (SJ), Dkt. Entries dated 11/19/2019.

    I.    Background

      The defendant is charged in a two-count superseding indictment with public benefits theft, in violation of 18 U.S.C. § 666(a)(1)(A), and healthcare fraud, in violation of 18 U.S.C. § 1347(a). Specifically, Count One alleges that from April 2015 to September 2018,

in her capacity as an EIP-participating speech therapist, the defendant fraudulently obtained more than $5,000 from the NYC DOHMH, an agency receiving federal funds that was responsible for administering the EIP in New York City. Count Two charges that, during the same timeframe, the defendant executed a scheme to defraud Medicaid by submitting fraudulent records and invoices relating to non-existent EIP therapy sessions.

At trial, the government intends to offer evidence that, contrary to the representations contained in session notes submitted to the NYC DOHMH and related invoices, the defendant either failed to meet with her clients as reported or, despite meeting them, failed to provide the level of services for which she sought payment. Among other evidence, the government will offer the testimony of parents and guardians whose children were prescribed the defendant's services as part of an overall treatment plan. It is anticipated that some of these parents will testify that the defendant submitted session notes to the NYC DOHMH seeking payment for services that she did not actually render to them or their children.

II. Argument

The government respectfully requests that the Court preclude the defendant from introducing evidence or eliciting testimony that some therapy sessions she provided through the EIP and related billings were non-fraudulent, because, under longstanding Second Circuit precedent, such evidence is entirely irrelevant to the factual issues that will be presented to the jury. In addition, the government respectfully requests that the Court preclude the defense from arguing, whether in its jury addresses or in cross-examination, that the victim agencies should not have paid the defendant for the fraudulent sessions, or, by doing so, led her to believe that her fraudulent practices were justified, because the Second Circuit has repeatedly held that such arguments do not constitute recognized defenses to criminal liability.

A. The Defendant Should be Precluded from Introducing Evidence of Legitimate Social Work

It is well-settled that, in fraud cases, evidence that a criminal defendant did not commit fraud in all instances is irrelevant. Courts, including the Second Circuit, have held that evidence that a defendant engaged in legal, honest conduct is simply irrelevant to whether the defendant engaged in the fraudulent conduct charged by the government. See United States v. Walker, 191 F.3d 326, 336 (2d Cir. 1999); United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions"); see also United States v. Boykoff, 67 F. App'x 15, 20-21 (2d Cir. 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant") (citation omitted); United States v. O'Connor, 580 F.2d 38, 43 (2d Cir. 1978) (affirming district court's exclusion of testimony that witnesses did not pay defendant any bribes "because such testimony would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts"); Levine v. SEC, 436 F.2d 88, 91-92 (2d Cir. 1971) (finding that the testimony of some customers of a broker-dealer that

misrepresentations had not been made to them "would not negate the testimony of the customers who testified that price predictions had been made to them.").[1]

In Walker, for example, the defendants were accused of mail fraud and making false statements in connection with an immigration services business they administered and through which they submitted fraudulent asylum applications. See Walker, 191 F.3d at 336. One of the defendants sought to introduce evidence that she had prepared truthful asylum applications as a means of disproving his alleged fraudulent intent. See id. In affirming the district court's exclusion of this evidence, the Second Circuit explained that whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent." Id.

Here, the government has not alleged that the defendant engaged in "ceaseless" criminal conduct, that "all" of the therapy sessions she reported having performed were fraudulent or that the defendant's practice was "permeated with fraud." Damti, 109 F. App'x at 456. Rather the government intends to argue that the defendant submitted fraudulent records of, and corresponding invoices for, specific therapy sessions purportedly provided to a limited number of clients. As in the cases cited above, evidence of other, legitimate aspects of the defendant's practice simply would not be probative of whether she committed the charged fraud. Accordingly, the defendant should be precluded from introducing evidence of legitimate therapy sessions and related billings in connection with EIP to prove a lack of fraudulent intent with respect to the conduct charged in the indictment.

> B. The Defendant Should be Precluded from Arguing that the Payment of Claims Negates Her Fraudulent Intent

The defendant should also be precluded from offering any variety of a "blame the victim" defense, including by arguing that the sources of payments received – including Medicaid, NYC DOHMH and private insurance carriers – should not have paid her invoices or that payment of fraudulent claims led the defendant to believe her practices were justified. It is well-settled that the negligence of the victim in failing to discover a fraudulent scheme is not a defense to a defendant's criminal misconduct. See United States v. Coyle, 63 F.3d 1239, 1244 (3d Cir. 1995). "A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence." United States v. Svete, 556 F.3d 1157, 1165 (11th Cir. 2009). "If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are

---

[1] On this point, other Circuits are in accord. See, e.g., United States v. Ellisor, 522 F.3d 1255, 1270 (11th Cir. 2008) (affirming district court's ruling precluding the defendant from offering evidence of his legitimate business activities in order to negate evidence of his fraudulent intent as to the charged conduct); United States v. Winograd, 656 F.2d 279, 284 (7th Cir. 1981) (finding defendant's performance of some legal trades irrelevant to his knowledge of illegal trades).

3

criminal statutes, not tort concepts." United States v. Colton, 231 F.3d 890, 903 (4th Cir. 2000) (quoting United States v. Brien, 617 F.2d 299, 311 (1st Cir. 1980)).

Indeed, any attempt to cast aspersions of negligence on the victim of a charged fraud scheme is at odds with the longstanding principle in this Circuit that such information is irrelevant. United States v. Thomas, 377 F.3d 232, 242-43 (2d Cir. 2004) (collecting cases); United States v. Amico, 486 F.3d 764, 780 (2d Cir. 2007) (holding that the victim's gullibility is not a defense to fraudulent conduct); cf. See United States v. Holland, 394 F. App'x 766, 768 (2d Cir. 2010) (finding that because "an innocent crime victim has no duty to detect a crime being perpetrated against it," any opportunity the victim had to detect the fraud and mitigate losses is "irrelevant to the order of restitution"). In other words, the negligence of a victim in failing to discover a fraudulent scheme is not a defense to criminal conduct. The legality of the defendant's conduct cannot be dependent on her choice of a gullible victim. See United States v. Benson, 548 F.2d 42, 46 (2d Cir. 1977).[2]

Here, the government does not dispute that the fraudulent session notes and invoices submitted by the defendant were ultimately accepted and paid from one of several sources of funds, including Medicaid and the NYC DOHMH. However, the defendant should not be permitted to argue that those entities somehow bear responsibility for failing to identify and combat her fraud. More specifically, the Court should preclude the defendant from: (1) inquiring of any witness about what steps, if any, the victims made to investigate the veracity of her session notes and related billings prior to accepting and/or paying them; (2) arguing or suggesting during cross-examinations that the victims should have dealt with the defendant's fraud differently, including by simply denying payment for the therapy sessions at issue; or (3) arguing that by accepting and paying for fraudulent therapy sessions, the victims led the defendant to believe that her practices were acceptable. See United States v. Nekritin, No. 10-CR-491 (KAM), 2011 WL 2462744, at *7 (E.D.N.Y. June 17, 2011) (rejecting premise that Medicare and Medicaid's payment of fraudulent claims is a defense to healthcare fraud; granting motion in limine to preclude defendants from so arguing at trial); see also United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 2647686 (ED.N.Y. July 1, 2016) (relying on Nekritin to preclude defendant from arguing "that he did not intend to defraud Medicare because Medicare paid his claims, negligently or otherwise").

---

[2] Courts, realizing that inquiries into a victim's negligence are irrelevant and potentially prejudicial, have taken measures to preclude such evidence and arguments. See, e.g., Thomas, 377 F.3d at 243–44 (affirming restrictions on cross-examination of victim; rejecting defendants' argument that victim's foolishness vitiated defendant's fraudulent intent); United States v. Davis, 226 F.3d 346, 358–59 (5th Cir. 2000) (affirming jury instruction that "the naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant"); see also United States v. Allen, 201 F.3d 163, 167 (2d Cir. 2000) (noting that "[t]he victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for her substantive offenses"); Thomas, 377 F.3d at 240–41 (same).

4

III.　Conclusion

For the reasons stated above, the government respectfully requests that the Court preclude the defendant from arguing, eliciting on cross-examination or offering evidence at the trial: (i) that some therapy sessions provided through the EIP and related billings were non-fraudulent; and (ii) that the sources of improper payments received by the defendant, i.e., the victims in this case, should not have paid the defendant or that, by doing so, led the defendant to believe her fraudulent practices were justified.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:　　/s/
Ryan C. Harris
Erin M. Reid
Assistant U.S. Attorneys
(718) 254-6489 /6361

cc:　Clerk of the Court (KAM) (via ECF)
　　　Counsel of Record (via ECF)