UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                                          Ind. No.: 19-CR-95

            -vs-


MARINA GOLFO,

                          Defendant.
-------------------------------------------------------------------X

## **DEFENDANT MARINA GOLFO'S MOTIONS *IN LIMINE***

Edward V. Sapone, Esq.
Chase Ruddy, Esq.
Sapone & Petrillo, LLP
Attorneys for Defendant
*Marina Golfo*
One Penn Plaza, Suite 5315
New York, New York 10119
Tel: (212) 349-9000
E-Mail: ed@saponepetrillo.com

## PRELIMINARY STATEMENT

Defendant Marina Golfo is charged by indictment with one count each of healthcare fraud (18 U.S.C. §1347(a)) and theft of government funds (18 U.S.C. §666(a)(1)(A)). The principal allegations against her are that, while serving as a therapist in connection with the New York State Early Intervention Program ("EIP") – a public program designed to provide remedial services to developmentally delayed children – she submitted fraudulent records and invoices and that, as a result, she received payment for therapy sessions which did not, in fact, occur.

Trial is scheduled to commence on June 22, 2020. At trial, we anticipate that the government will seek to introduce evidence that, contrary to representations contained in session notes and related invoices, Ms. Golfo either failed to meet with the children for whom she was providing therapy as reported or, despite meeting with them, failed to provide the level of services for which payment was sought. It is anticipated that the government will offer testimony from parents that sessions did not occur as described on the session notes, and that, as a result, Ms. Golfo was paid for services that she did not actually render.

Ms. Golfo anticipates that the government will move to preclude her from calling witnesses, eliciting testimony on cross-examination or introducing evidence that some of the therapy sessions she provided and the related billings were "non-fraudulent", i.e. sessions for which there is no dispute that she performed therapy as reflected on the session notes. We anticipate that the government will argue that this evidence is not relevant to the allegations that Ms. Golfo did not perform therapy sessions on other occasions.

This appears to implicate two potential categories of evidence and testimony: (1) evidence or testimony from those parents called by the government that Ms. Golfo performed therapy for their child on some occasions, as reflected on the session notes, and not on others; and (2) evidence

or testimony from parents regarding whose children no accusations of fraudulent conduct involving Ms. Golfo are made.

Respectfully, Ms. Golfo should be permitted to introduce witness testimony and evidence from both categories. As to the first category, Ms. Golfo anticipates raising a defense that no fraud was committed because all of the mandated hours of therapy were performed for every child, even if the session notes were not always an accurate reflection of the date and time the sessions were completed. That Ms. Golfo performed all of the hours for which she was paid directly undermines the government's theory that she was paid for services that she did not actually render, and is relevant to whether she possessed an intent to defraud. Ms. Golfo should not be required to parse individual sessions into "fraudulent" and "non-fraudulent." It is necessary to discuss the services rendered to the child as a whole, because the foundation of Ms. Golfo's defense is that she performed services equivalent to the amount that she was paid.

As to the second category, Ms. Golfo does not seek to establish her innocence of the charged conduct by presenting proof of other honest conduct. Ms. Golfo anticipates calling witnesses, and introducing evidence from a cross-section of families for which she performed therapeutic services during the charged period. It is anticipated that sessions performed for some of those families form the basis of the charges in this case, and that others will not. The purpose of calling those witnesses whose sessions are not called into question by the government is not an attempt to present proof of the absence of criminal acts on specific occasions, but to demonstrate Ms. Golfo's plan, habit, and *modus operandi* by demonstrating patterns of behavior engaged in by Ms. Golfo with respect to how sessions were performed, where sessions were performed, how session notes were prepared and signed, and how session notes were treated by Ms. Golfo and the families she served.

We believe that this evidence is relevant under FRE 401 as it is offered for a different purpose than what the government raises and that is permissible as "reverse 404(b)" evidence, that she did not possess an intent to defraud. This evidence will be relevant and probative of her lack of criminal intent, and the probative value will not be substantially outweighed by the danger of unfair prejudice under Fed.R.Evid. 403.

As set forth in Point II, Ms. Golfo anticipates calling an expert witness at trial to help educate the jury about the Early Intervention Program, the relative roles of the therapists and the early intervention agencies in the program and the billing process, including the role of session notes in that process. At this time, however, Ms. Golfo has not yet retained such an expert. Therefore, she asks that the Court grant her leave to raise any appropriate arguments on this issue at such time as she has retained an expert and provided a Rule 16 expert disclosure to the government.

Finally, while admittedly uncommon, we respectfully ask the Court to permit counsel to conduct *voir dire* of the prospective jurors as permitted by Fed. R. Crim. P. 24(a). Attorney *voir dire* will assist the Court in its attempt to ensure a fair trial to both sides by discovering jury bias before jurors are selected and impaneled. The potential for juror bias is heightened in a case like this one, which involves Medicare, government funds, and children. Put differently, the potential for juror bias is heightened here because Ms. Golfo is in effect being accused of stealing government money for poor people while failing to provide care to young children who suffer with severe learning and other psychological disabilities.

POINT I

THE COURT SHOULD PERMIT DEFENDANT TO INTRODUCE EVIDENCE TO DEMONSTRATE THAT SHE LACKED THE REQUISIT CRIMINAL INTENT, INCLUDING DOCUMENTARY AND TESTIMONIAL EVIDENCE OF COMPLETED SESSIONS THAT THE GOVERNMENT DOES NOT ALLEGE ARE FRAUDULENT

The Court should allow Ms. Golfo to defend herself by introducing evidence that will demonstrate that she did not possess an intent to defraud the government healthcare programs that support the Early Intervention Program. The government will argue that Ms. Golfo engaged in fraudulent billing for sessions that never took place. Ms. Golfo will seek to demonstrate at trial that she did in fact perform therapeutic sessions consistent with the number of hours submitted on the session notes and that she did not possess an intent to defraud. Ms. Golfo anticipates calling witnesses, and introducing evidence from families for which she performed therapeutic services during the charged period. It is anticipated that sessions performed for some of those families form the basis of the charges in this case, and that others will not.

For those parents called by the government, or for whom the government seeks to introduce session notes and other evidence to demonstrate that Ms. Golfo did not perform the sessions, Ms. Golfo should be permitted to explore on cross-examination or introduce evidence that she did perform the requisite number of hours, some of which were accurately reflected on the session notes and some of which were not. The foundation of her defense is that the amount she was paid accurately reflected the total number of hours of therapy she provided to the children, even if it was not always accurately reflected in the session notes for a given date or time.

If the government's argument is that the fact that Ms. Golfo performed an undisputed session on Wednesday is irrelevant to whether she performed a disputed session on Tuesday, that argument misses the mark. Ms. Golfo's defense is not that one necessarily bears on the other, but that taking the week as a whole, Ms. Golfo performed the total number of hours that the child was

mandated to receive through the EIP Program. That she performed an undisputed session on Wednesday is undoubtedly relevant to whether she performed the mandated hours, and ultimately to whether she possessed a fraudulent intent in submitting the paperwork she did supporting that mandated number of hours.

As to the second category of potential evidence and testimony, the purpose of calling witnesses whose sessions are not called into question by the government is not an attempt to present proof of the absence of criminal acts on specific occasions, but to demonstrate to the jury Ms. Golfo's modus operandi with respect to how sessions were performed, where sessions were performed, how session notes were prepared and signed, and how session notes were treated by Ms. Golfo and the families she served. This evidence will be relevant and probative of her lack of criminal intent and will not offend Fed. R. Evid. 403.

More than 50 years ago in *Washington v. Texas*, 388 U.S. 14 (1967), the Supreme Court underscored the importance of the right of criminal defendants to present their defenses at trial. The Court recognized that the compulsory process clause was designed to secure more than the presence of the defendant's witnesses:

> The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present the defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.

*Id. See also, Wardius v. Oregon*, 412 U.S. 470 (1973) (explaining criminal defendant's right to present defense).

The defendant has a right under the compulsory process clause to present any evidence that may reasonably be deemed to establish the existence of facts in their favor. Fed. R. Evid. 401. The

6

test of relevance is a flexible one, requiring only that the proffered evidence make the existence of a fact more or less probable than it would be without the evidence. *See* Fed.R.Evid. 401; *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982). Nonetheless, the standards of relevance applied to the admissibility of the defendant's evidence may not be arbitrary. If the relevance of the evidence is something about which reasonable people might differ, using the analysis of *Washington v. Texas*, 388 U.S. 14 (1967), instructing the jury concerning any particular reasons to be cautious about the evidence is far preferable to its exclusion.

To the extent that the government submits evidence in the form of documents and testimony by parents through which they attempt to show that Ms. Golfo did not perform therapy for which she was paid, Ms. Golfo should be permitted to introduce evidence that she did in fact perform the therapy for which she was paid. Evidence that Ms. Golfo performed the number of hours for which bills were submitted and for which she was paid, she will argue, goes directly to whether she had an intent to defraud. Put another way, if she did the hours for which she was paid there is no intent to defraud, because there is no payment for sessions that were not performed.

Part of the anticipated proof that she completed the requisite number of hours each week will necessarily require Ms. Golfo to submit evidence and inquire of the government's witnesses whether she performed sessions, some of which may have been in accordance with the session notes submitted, and some of which may not. By not permitting Ms. Golfo to submit evidence that she performed some of the sessions as reported in the session notes, necessarily forecloses a defense that she performed all of the requisite hours. Therefore, we ask that the Court allow Ms. Golfo to introduce such evidence through cross-examination or through defense evidence because it is relevant, because it is necessary for her to exercise her 6th Amendment right to put on a defense,

and because it is necessary to complete the narrative of the crimes on trial (*see United States v. Frank*, 11 F.Supp.2d 313, 316 (S.D.N.Y. 1998)).

Ms. Golfo should also be permitted to introduce evidence and witnesses related to families not implicated in the government's case (other acts evidence), because it is relevant and constitutes permissible "reverse 404(b)" evidence of Ms. Golfo's modus operandi and lack of intent to defraud.

Federal Rule of Evidence 404(b) provides that in a criminal prosecution, evidence of other acts are not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. The evidence may be admissible, however, for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

In essence, the government will argue that evidence of Ms. Golfo's "good acts" should not be admissible to establish her "good character"; that Ms. Golfo should not be permitted to introduce such evidence to demonstrate that on the occasions where she is alleged to have submitted fraudulent session notes, she could not have because she was acting in accordance with that good character.

This is not, however, the purpose for which Ms. Golfo seeks to introduce any "other act" evidence. Ms. Golfo seeks to introduce this evidence to establish commonalities with respect to how sessions were performed, where sessions were performed, how session notes were prepared and signed, and how session notes were treated by Ms. Golfo and the families she served, i.e. her plan or modus operandi. Evidence of her plan or modus operandi will demonstrate that there was no criminal intent at the time she submitted the allegedly fraudulent session notes implicated in this case.

"The Second Circuit has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate … propensity." *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004). On numerous occasions, federal and state courts have admitted similar acts evidence for defensive purposes. *See United States v. Aboumoussallem*, 726 F.2d 906, 911–12 (2d Cir. 1984), citing *United States v. McClure,* 546 F.2d 670 (5th Cir.1977); *United States v. Robinson,* 544 F.2d 110 (2d Cir.1976); *State v. Garfole,* 76 N.J. 445, 388 A.2d 587 (1978); *State v. Bock,* 229 Minn. 449, 39 N.W.2d 887 (1949); *Commonwealth v. Murphy,* 282 Mass. 593, 185 N.E. 486 (1933); *see also* 2 Wigmore, *Evidence* §§ 304, 341 (Chadbourn rev. 1979). Further, the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword. *Aboumoussallem*, 726 F.2d at 911–12 (2d Cir. 1984). This is so because the "risks of prejudice are normally absent when the defendant offers similar acts evidence […] to prove some fact pertinent to the defense." *Id*. "In such cases, the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense." *Id*.

Here, the evidence sought to be introduced by Ms. Golfo is relevant to a fact pertinent to the defense; it is relevant Ms. Golfo's practice, her modus operandi, and ultimately to whether she possessed an intent to defraud. The government is accusing Ms. Golfo of fraud based on what she's doing, or not doing, in certain instances. The relevance of this anticipated evidence would be to demonstrate that Ms. Golfo treated each case, and each child the same way; that she had a common plan or modus operandi with respect to how she approached therapy. This evidence will show, that her practices were identical in claims that the government opines are fraudulent and in those that they do not, which further undermine the government's theory of fraud.

The relevance of this evidence is not the end of the analysis. Upon satisfying itself that the tendered evidence is relevant, a district court must set about the task of weighing the probative value against the danger of unfair prejudice. When evidence's probative value is substantially outweighed by the danger of unfair prejudice, the trial court is empowered, at its discretion, to exclude the evidence. *See* Fed.R.Evid. 403.

In this context unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Note to Fed.R.Evid. 403. Put another way, courts should be sensitive to "unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." 22 C. Wright & K. Graham, Federal Practice and Procedure s 5215 at 275 (1978).

The task of weighing these competing interests of course belongs to the trial judge, the gatekeeper of evidence. Because the trial court is in the best position to evaluate all the circumstances connected with these interests, it is given broad discretion. *See United States v. Robinson*, 560 F.2d 507, 514 (2d Cir. 1977). The trial court applying Rule 403 must make a "conscientious assessment" of whether unfair prejudice substantially outweighs probative value. *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

Respectfully, this evidence does not pose a danger of unfair prejudice, or of confusing the jury. It is extremely probative of Ms. Golfo's claims that she completed all of the hours of therapy for which she was paid and that she did not possess an intent to defraud. Meanwhile, the danger of unfair prejudice is minimal. There is little danger that this evidence will persuade by illegitimate means. It has little likelihood of enflaming emotions or otherwise impermissibly influencing the triers of fact.

Therefore, because this evidence will be relevant and probative of Ms. Golfo's intent, and it will not offend Rule 403, the Court should permit her to introduce it.

POINT II

THE COURT SHOULD GRANT MS. GOLFO LEAVE TO MOVE TO PERMIT
EXPERT TESTIMONY AT SUCH TIME AS SHE RETAINS AN EXPERT

Ms. Golfo should be permitted to defend herself by introducing expert testimony that will assist the triers of fact in understanding the concepts and disciplines relative to early intervention, including, but not limited to, the use of session notes and billing practices used by early intervention agencies.

Fed.R.Evid. 702, which guides the initial test for admission of expert evidence, provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under this rule, a district court has the role of gatekeeper of the evidence, and the duty of ensuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993). In addition to a reliability assessment, the court also must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence—in short, whether it is relevant. *See Daubert*, 509 U.S. at 591.

Ms. Golfo anticipates calling an expert in early intervention services and the billing practices engaged in by early intervention agencies. At this time, however, she has not retained an

expert, and we are not in a position to describe in detail the scope and content of the witnesses' proposed testimony.

Therefore, Ms. Golfo asks that the Court grant her leave to move for the admission of expert testimony at such time as she has retained an expert and provided the government with a Rule 16 expert disclosure.

POINT III

THE COURT SHOULD ALLOW COUNSEL TO CONDUCT *VOIR DIRE*

Ms. Golfo respectfully requests that the Court permit the parties to conduct the examination of prospective jurors.

Trial by an impartial jury is the most precious safeguard for "individual liberty and the dignity and worth" of every person. Ann M. Roan, *Reclaiming Voir Dire*, THE NACDL CHAMPION, July 2013, at 22. To ensure the selection of an impartial jury, *voir dire* has two purposes: to identify jurors who should be challenged for cause and to facilitate the intelligent exercise of peremptory challenges. *See id*. *Voir dire* must be sufficient in scope and length so that issues of juror bias are explored sufficiently. *See id*.

The critical importance of securing the right to question prospective jurors thoroughly and carefully has been dramatically illustrated by recent scientific research about implicit bias. *See* Judge Mark W. Bennett, *GENERAL ESSAY: Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 HARV. L. & POL'Y REV. 149, 149-165 (2010). Implicit bias is a product of "the plethora of fears, feelings, perceptions and stereotypes that lie deep within our subconscious, without our conscious permission or acknowledgment." *Id*. at 149. Implicit biases are pervasive,

and many people are unaware they hold such biases. *See id*. at 151-52. A person's implicit biases predict not just their behavior, but their perceptions of unfamiliar situations. *See id*. People differ in their levels of implicit bias, and this type of bias is very difficult to ascertain because it operates at a subconscious level, beneath the individual's conscious awareness. *See id*. at 150. Implicit biases are "pervasive and powerful" influences on people's decision-making processes. *See id*.

Mark W. Bennett, a United States District Judge in the Northern District of Iowa, explored the role of implicit bias in jury selection, and in particular the problem of judge-dominated *voir dire*, in a law review article for the Harvard Law and Policy Review. In the article, Judge Bennett cited social science research on implicit bias for the proposition that judges are not in as strong a position as the lawyers to anticipate implicit biases in jurors and determine how those biases might affect the case. Thus, permitting judges to dominate the initial jury selection causes more biased jurors to remain on a case and exacerbates the role of implicit bias in jury trials. *See id*. at 158.

According to Judge Bennett, judge-dominated *voir dire* prevents detection and removal of implicitly-biased jurors because: (1) lawyers almost always know the case better than the trial judge and are in a better position to determine how explicit and implicit biases among potential jurors might affect the outcome (*see id*. at 160); (2) trial lawyers have greater access to resources to develop *voir dire* strategies to address both explicit and implicit biases of prospective jurors and can more thoroughly and realistically evaluate juror's answers (*see id*.); and (3) empirical research suggests that jurors respond more candidly and are less likely to give socially desirable answers to questions from lawyers than from judges (*see id*.). As a result, Judge Bennett advocates for expanded lawyer participation in jury selection. *See id*. at 165.

For its part, Fed. R. Crim. P. 24(a) specifically provides for lawyer participation in *voir dire*: "(1) the court may examine prospective jurors or may permit the parties to do so."

While we know that local legal tradition in this district typically leads the court to take charge of *voir dire*, and that lawyers have some input on the *voir dire* process through proposed questions to the court, the research shows, most respectfully, that permitting the lawyers to conduct *voir dire* does the most to ensure both the defendant and the government an impartial jury, and by extension a fair trial. As Judge Bennett points out in his article, expanding lawyer participation in jury selection will help eliminate jurors' tendency to give to judges answers the jurors believe will be viewed as socially acceptable. Given their knowledge of their respective cases, the trial lawyers can also formulate follow-up questions that more thoroughly and realistically evaluate the effect of the jurors' possible biases, which are not often identifiable when *voir dire* questions are submitted to the court in advance.

For these reasons, we respectfully ask the Court to permit the parties to conduct the examination of prospective jurors. In the alternative, we ask that a long-form jury questionnaire be sent to the prospective jurors at the time of the intial summons.

## **CONCLUSION**

For the above reasons, Ms. Golfo respectfully requests that the Court grant her motions *in limine*. We look forward to addressing the Court on March 5, 2020.

                              Respectfully submitted,

                              */s/ Edward V. Sapone*
                              Sapone & Petrillo, LLP
                              *Counsel to Defendant*
                              *Marina Golfo*
                              1 Penn Plaza, Suite 5315
                              New York, New York 10119
                              Telephone: (212) 349-9000

cc:    Ryan Harris, Esq.
       Erin Reid, Esq.
       Robert Pollack, Esq.