```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

        v.                                 MEMORANDUM & ORDER

MARINA GOLFO,                              19-cv-00095(KAM)

                Defendant.

----------------------------------X
```
**KIYO A. MATSUMOTO, United States District Judge:**

On February 22, 2019, Marina Golfo ("defendant") was indicted on charges of public benefits theft, in violation of 18 U.S.C. § 666(a)(1)(A), and healthcare fraud, in violation of 18 U.S.C. § 1347(a). Jury selection and trial on the indictment are tentatively scheduled to begin in the summer of 2020. The government and defendant have each filed motions *in limine* in advance of trial. For the reasons set forth below, the government's motions are granted, and defendant's motions are granted in part and denied in part.

## BACKGROUND

The New York State Early Intervention Program ("EIP") was a New York State program that provided remedial services to developmentally delayed children. (ECF No. 73, Indictment ¶ 5.) These services, which included physical therapy, occupational therapy, and social work services, were provided by therapists employed by agencies ("EIP agencies"), which, in turn,

1

contracted or subcontracted with the New York State Department of Health ("NYS DOH"). (*Id.*)[1] Payment of an EIP therapy session was contingent on a therapist providing "session notes," a written report documenting the therapy session with a child. (*Id.* ¶ 6.) The session notes include the date, time, and place of a session, as well as information about the therapy given, and the child's progress in response to the therapy. (*Id.*) An EIP therapist, and the child-patient's parent or guardian, were required to sign the session note. (*Id.*) EIP therapists based in New York City were paid for their services through EIP agencies, which were reimbursed by the NYC DOHMH, Medicaid, or private insurance carriers. (*Id.* ¶ 7.)

The Indictment charges that defendant, an EIP therapist, defrauded Medicaid and the NYC DOHMH between April 2015 and September 2018 by falsely reporting that she had administered EIP therapy sessions when she had not. (*Id.* ¶¶ 8-9.) According to the government, defendant submitted fraudulent session notes and invoices for more than 1,500 non-existent therapy sessions. (*Id.* ¶ 9.) As a result, NYC DOHMH and Medicaid paid defendant's improper claims in amounts exceeding $146,000 and $10,000, respectively. (*Id.*) Accordingly, the Indictment charges defendant with theft of funds under 18 U.S.C.

---

[1] EIP was administered and overseen by the New York City Department of Health and Mental Hygiene ("NYC DOHMH"), with ultimate oversight of EIP residing with NYS DOH. (*Id.*)

§ 666(a)(1)(A), and health care fraud under 18 U.S.C. § 1347(a). (*Id.* ¶¶ 10-13.)

## STANDARD OF REVIEW

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., LP. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). The trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds," *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001), and the ruling remains "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer," *Luce*, 469 U.S. at 41.

The Federal Rules of Evidence provide the framework for determining the admissibility of evidence. "As a general matter, all relevant evidence is admissible . . . unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). "[E]vidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action

3

more probable or less probable than it would be without the evidence.'" *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) (quoting Fed. R. Evid. 401).  Relevant evidence may be excluded "if 'its probative value is substantially outweighed by a danger of . . . unfair prejudice,'" *United States v. Bourne*, No. 08-CR-888(NGG), 2011 WL 4458846, at *12 (E.D.N.Y. Sept. 23, 2011); Fed. R. Evid. 403, and irrelevant evidence is never admissible, Fed. R. Evid. 402.

## DISCUSSION

The government moves to preclude defendant from arguing, eliciting on cross-examination, or offering evidence at trial that: (1) defendant provided some number of legitimate, non-fraudulent therapy sessions and related billings through the EIP; and (2) the allegedly defrauded agencies that paid defendant for fraudulent sessions erred in doing so, or thereby induced defendant into believing that her practices were justified.  (ECF No. 92, Government's Motions *in Limine* ("Gov't Mot.").)  Defendant's motions seek: (1) a ruling that evidence of non-fraudulent therapy sessions is admissible at trial through documentary and testimonial evidence; (2) leave to move the court at a future date to authorize expert testimony; and (3) permission for the parties to conduct *voir dire* of prospective jurors, in lieu of the court.  (ECF No. 93, Defendant's Motions *in Limine* ("Def. Mot.").)

4

I. The Government's Motions

    A. Non-Fraudulent Social Work

        The government intends to introduce evidence at trial that defendant submitted session notes and invoices to the NYC DOHMH which falsely represented that she met with or provided services to clients when she had not, or which overstated the level of services defendant actually provided to her clients. (Gov't Mot. 2.) Specifically, the government will offer the testimony of parents and guardians whose children were prescribed the defendant's services as part of an overall treatment plan, and anticipates that some of these witnesses will testify that the defendant did not actually render to them or their children the services she claimed in her session notes or invoices. (*Id.*) According to the government, evidence that defendant provided some non-fraudulent EIP therapy sessions is irrelevant, and should be precluded. The court agrees.

        "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Second Circuit has long recognized that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) (quoting *United States v. Scarpa*,

5

897 F.2d 63, 70 (2d Cir. 1990)). "The reasoning behind this rule is straightforward: A single occurrence of lawful conduct is simply irrelevant to other occurrences of unlawful conduct." *Id.* (citation omitted).

Evidence that defendant *also* provided accurately documented and invoiced EIP therapy sessions is irrelevant to whether defendant sought and received payment for phantom or embellished therapy sessions. The Second Circuit has soundly rejected the use of such propensity or character evidence. *Chambers*, 800 F. App'x at 46 ("Chambers's argument that his running of a legitimate law practice makes it less likely that he had corrupt intent to bribe Villanueva is precisely the type of propensity inference that Rule 404(b)(1) is intended to prohibit."); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999) ("Whether [the defendant] had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent.").

Defendant insists she will introduce evidence of non-fraudulent sessions—which are not at issue—not to demonstrate her good character, but rather, to show that:

> [I]mportant aspects of her work, including her approach to all of her therapy sessions, communication with the parents or guardians, her willingness to adapt therapy times and locations to conform to the needs of each child and family, her approach to making up missed sessions, and most importantly, her

6

>     treatment of session notes, was consistent from family to family.

(ECF No. 97, Reply in Support of Defendant's Motion *in Limine* ("Def. Reply") 3-4.) Evidence of these practices, defendant argues, will "demonstrate[] her *modus operandi*, and ultimately her lack of intent to defraud." (*Id.* 4.)[2]

The evidence of defendant's routine therapeutic practices, however, is not admissible for the purpose of establishing defendant's propensity to submit legitimate claims. "While non-criminal activities may be relevant where the defendant is alleged to have engaged in 'ceaseless' criminal conduct, '[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions.'" *United States v. Nekritin*, No. 10-CR-491 S-2 KAM, 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011) (quoting *Scarpa*, 913 F.2d at 1010-11 (2d Cir. 1990)); *see also United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (noting that the trial

---

[2] The court recognizes that under Federal Rule of Evidence 406, "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. Habit "is more specific" than character evidence: "[i]t describes one's regular response to a repeated specific situation." Fed. R. Evid. 406, Advisory Committee's Note to 1972 Proposed Rule (internal quotation marks omitted). The court will not determine whether the evidence defendant intends to proffer is admissible under Rule 406, but it bears emphasis that evidence of one's habit is typically permitted to prove one's behavior on a *particular* occasion. *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 125 (2d Cir. 2016) (citing *Carrion v. Smith*, 549 F.3d 583, 586-87, 590 (2d Cir. 2008)). Here, defendant is not charged with committing fraud once; she is charged with over 1,500 fraudulent acts.

7

court correctly excluded testimony that witnesses did not pay defendant any bribes "because such testimony would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts"); *United States v. Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993) (finding that testimony concerning prior good acts is not necessarily exculpatory because "defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence"). The offenses charged do not turn on the continuity, or ceaseless nature of defendant's conduct, but whether defendant lied about the extent of therapy services that she provided to her patients on specific occasions. Indeed, defendant could be convicted on the basis of a single false submission, even if her other claims prove to be valid.

Moreover, defendant's therapeutic *modus operandi* is irrelevant. Though a criminal defendant may introduce evidence of a *modus operandi* under Rule 404(b) to advance an "alternative perpetrator" defense, *see United States v. Jergensen*, No. 8:16-CR-235(BKS), 2017 WL 11458077, at *6 (N.D.N.Y. Oct. 6, 2017), the defendant here is not proffering evidence of *another* fraud "of a signature nature or [] marked by a common modus operandi" to suggest that some *other* fraudster perpetrated the instant scheme. *See United States v. Donzo*, No. CRIM.A. 07-CR-134, 2007 WL 4115800, at *8 (E.D. Pa. Nov. 16, 2007). For instance,

8

defense counsel does not assert that someone other than defendant falsified the session notes and billings at issue.

Lastly, even if evidence of defendant's routine therapeutic practices were at all relevant, under Federal Rule of Evidence 403, any probative value "is substantially outweighed" by the dangers of confusing the issues before the jury, misleading the jury into believing that defendant's generally lawful conduct is determinative with respect to her allegedly unlawful conduct, and wasting time. *See* Fed. R. Evid. 403.

### B. Reimbursements by Victim Agencies

The government further moves the court to preclude defendant "from offering any variety of a 'blame the victim' defense, including by arguing that the sources of payments received–including Medicaid, NYC DOHMH and private insurance carriers–should not have paid her invoices or that payment of the fraudulent claims led the defendant to believe her practices were justified." (Gov't Mot. 3.) Defendant assures the court that she has no intention of asserting that the government agencies and private insurers acted negligently by paying her claims. (Def. Opp. 2.) Instead, she plans to show that she lacked intent to defraud because she relied on "information and instruction provided to her by the early intervention agencies by which she was employed, and which were ultimately responsible

9

for submitting the bills for payment . . . ." (*Id.*) Specifically, defendant intends to argue at trial that she actually did complete "all of the mandated hours of therapy" for her patients, but certain documents did not accurately reflect the precise dates and times of the therapy sessions. (*Id.*) Defendant claims she harbored the belief that her practices were acceptable based on information and instructions, as well as payments, provided by the EIP session payors. (*Id.*)

In *United States v. Thomas*, the Second Circuit joined several of its sister circuits by holding that a fraud victim's negligence in failing to detect a fraudulent scheme is not a defense to criminal conduct. 377 F.3d 222, 243-44 (2d Cir. 2004) (collecting cases); *see also United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (upholding district court's decision neither to charge the jury nor allow the defendant to argue "that it is a defense to mail fraud to demonstrate that the victim could have discovered based on external sources that the representation was false"). In *United States v. Ahmed*, Judge Irizarry precluded a species of the "blame the victim" defense, similar to that promoted by defendant here. *United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 8732355, at *3-4 (E.D.N.Y. June 24, 2016). Ahmed, a surgeon accused of defrauding Medicare, argued that evidence Medicare paid his claims, "without any notice or indication of its objection," was

10

relevant to Ahmed's intent because it led him to conclude that his claims were proper. *Id.* at *3. Ahmed maintained that the principle espoused by the Second Circuit in *Thomas* did not apply to the evidence of Medicare's payments because Ahmed was not seeking to establish Medicare's negligence *per se*. *Id.* Judge Irizarry rejected Ahmed's argument as "nothing more than a repackaged version of the argument expressly prohibited by [*Thomas* and related cases], *i.e.*, victim negligence negates fraudulent intent." *Id.*[3]

In light of Second Circuit precedent, the court grants the government's motion and precludes defendant from arguing that Medicaid, NYC DOHMH, or private insurance carriers somehow lulled or induced defendant into the allegedly fraudulent conduct at issue by paying for allegedly fraudulent claims. For the avoidance of doubt, the court grants the government's motion to the extent it seeks to preclude defendant from: "(1) inquiring of any witness about what steps, if any, the victims made to investigate the veracity of her session notes and related billings prior to accepting and/or paying them; (2)

---

[3] The holding in *Ahmed* relied, in part, on the undersigned's decision in *Nekritin*, cited earlier in this Memorandum and Order. In *Nekritin*, defendants intended to argue at trial "that by paying prior claims of a similar nature, Medicare and Medicaid led the defendants to believe their billings . . . were acceptable." 2011 WL 2462744, at *1. The court "preclude[d] defendants from arguing or presenting evidence that Medicare and Medicaid's payment of their claims is a defense to health care fraud." *Id.* at *7.

11

arguing or suggesting during cross-examinations that the victims should have dealt with the defendant's fraud differently, including by simply denying payment for the therapy sessions at issue; or (3) arguing that by accepting and paying for fraudulent therapy sessions, the victims led the defendant to believe that her practices were acceptable." (Gov't Mot. 4.)

Moreover, the court also precludes defendant from arguing that information or instructions conveyed by claim payors negated defendant's intent. Defendant certainly has not made clear what evidence she will present in support of such argument. Absent any context, the defendant's contention in this regard too closely resembles an impermissible "blame the victim" argument. On the other hand, defendant may be able to present evidence that Medicaid or other payors affirmatively instructed defendant to submit claims in a certain form, and that, defendant's good faith adherence to these instructions induced her to submit the allegedly fraudulent claims underpinning the government's case. If so, defendant could legitimately argue her intent to defraud was negated. The court thus grants defendant leave to move *in limine* to advance this argument no later than seven days from the date this Memorandum and Order is entered. The motion's success will depend, in part, on defendant articulating what evidence she intends to introduce in support of the argument that her criminal intent

12

was negated by the claim payors' instructions.  Finally, the instant Memorandum and Order does not preclude defendant from asserting that she actually completed "all of the mandated hours of therapy" for her patients, in order to cast reasonable doubt on her criminal intent to defraud.  (*See* Def. Opp. 2.)

## II.  Defendant's Motions

### A. Evidence of Completed Sessions

Defendant seeks to admit two categories of evidence: "(1) evidence of testimony from those parents called by the government that Ms. Golfo performed therapy for their child on some occasions, and not on others; and (2) evidence or testimony from parents regarding whose children no accusations of fraudulent conduct involving Ms. Golfo are made."  (Def. Mot. 2-3.)  Turning to the second category first, defendant anticipates calling witnesses whose sessions are not at issue to demonstrate "Ms. Golfo's plan, habit, and *modus operandi* . . . ."  (*Id.* 3.) As discussed above, "[e]vidence that a defendant charged with fraud engaged in other, non-fraudulent activity is generally irrelevant."  *Nekritin*, 2011 WL 2462744, at *5; *see also United States v. Carton*, No. 17 CR 680 (CM), 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018)("[I]t is black-letter law that 'evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.'") (quoting *United States v. Boykoff*, 67 App'x 15, 20-21 (2d Cir. 2003)).

13

Accordingly, defendant's motion to admit evidence of her plan, habit, or *modus operandi*, is denied for the same reason the government's motion to preclude such evidence is granted.

The other category of evidence defendant plans to present is somewhat ambiguous, but defendant apparently intends to argue at trial that she actually did perform the therapeutic services as represented in her session notes and invoices, but for one reason or another, misstated the precise dates and times on which the therapy sessions took place.  (*See* Def. Mot. 5-6 ("[T]aking the week as a whole, Ms. Golfo performed the total number of hours that the child was mandated to receive through the EIP Program.").)  Put differently, it appears that defendant intends to chalk up the alleged fraud to a recordkeeping mishap.  So long as the proposed evidentiary submissions relate to EIP therapy sessions that the government puts at issue, evidence furthering defendant's contention would be relevant and presumptively admissible.  A hypothetical jury may find testimony or records in support of defendant's argument probative of defendant's intent by suggesting defendant accurately represented the *extent* of services she provided to a particular EIP patient in her session notes and billings, and thus, did not intend to reap unearned sums from Medicaid, NYC DOHMH, and private insurance carriers.

Despite the theoretical relevance of defendant's argument, however, her motion does not articulate what form the evidence supporting it may take.  Further obscuring matters, the government's response barely addresses defendant's "bad recordkeeping" argument.  Therefore, the court will preliminarily, and without prejudice, grant defendant's motion *in limine* to admit evidence in support of her "recordkeeping" argument, but may exclude testimony or documentary evidence at trial if the evidence is not being offered in support of this argument or for any other relevant and admissible purpose.

**B. Leave to Permit Expert Testimony**

Defendant seeks leave to call an expert that will testify with respect to "early intervention, including, but not limited to, the use of session notes and billing practices used by early intervention agencies."  (Def. Mot. 11.)  Defendant has yet to retain an expert, and therefore is "not in a position to describe in detail the scope and content of the witnesses' proposed testimony."  (*Id.* 12.)

Defendant's motion is too vague, and therefore, the court reserves decision.  The scheduling order in this case requires the parties to disclose, by May 18, 2020, "the names of any expert witness, a description of qualifications, and a summary of expected testimony, and [to] comply with all other requirements of Rule 16(a)(1)(G) and Rule 16(b)(1)(C) of the

15

Federal Rules of Criminal Procedure." (ECF No. 102, Am. Sched. Order ¶ 3.) The scheduling order also sets forth a briefing schedule for any subsequent *Daubert* motions. (*Id.*) To the extent defendant is asking the court to pre-approve the testimony of an as-yet unidentified expert, the court will not allow defendant to circumvent the Federal Rules and scheduling order, or to undermine the government's opportunity to object to the defense's expert or the scope of his/her testimony.

### C. Jury *Voir Dire*

Finally, defendant requests that the court permit the parties' attorneys to question jurors as part of *voir dire*. (Def. Mot. 12-15.) The government opposes this request. (ECF No. 95, Government's Opposition to Defendant's Motion *in Limine* ("Gov't Opp.") 3-4.) Federal Rule of Criminal Procedure 24(a) provides that the "court may examine prospective jurors or may permit the attorneys for the parties to do so." Fed. R. Crim. P. 24(a). Federal judges have "ample discretion in determining how to best conduct the *voir dire*." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981); *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002) ("Voir dire is necessarily a matter in which the trial court has extremely broad discretion.").

Defendant fails to argue persuasively that attorney-conducted *voir dire* is warranted. Notwithstanding defendant's baseless assertion that "[t]he potential for juror bias is

16

heightened" because this case "involves Medicare, government funds, and children," (Def. Mot. 4), the government correctly notes that this is an ordinary fraud case which does not implicate the jury's ability to fairly render a verdict. (Gov't Opp. 4.) Defendant also provides no case citations or other support for her conclusory statement, or any reason that *voir dire* conducted by a federal judge would not be just as likely, if not more likely, to yield honest answers from prospective jurors.

Defendant's lone authority is a law review article by former District Judge Mark W. Bennett.[4] (Def. Mot. 12-14.) Judge Bennett's article advocates for an expansion of attorney-conducted *voir dire* as a partial remedy for implicit bias in the legal system, specifically in the context of *Batson* challenges. 4 Harv. L. & Pol'y Rev. at 158. Reading the article as whole, it is clear that Judge Bennett's primary concern is *racial* bias in the jury selection process, but defendant simply ignores this context and repurposes the article to advocate for wholesale abandonment of judge-conducted *voir dire*. Even assuming attorney questioning of jurors was a suitable remedy for racial bias, defendant does not claim she is remotely vulnerable to such bias.

---

[4] *See* Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149 (2010).

17

At bottom, the court is dubious that permitting defense counsel or the government to question prospective jurors would pose any real advantage, and concurs with Judge Broderick's recent assessment, that:

> [C]ourt-conducted *voir dire* assures that the parties do not stray into impermissible areas that could potentially taint the prospective jurors' answers or points of view. In addition, court-conducted *voir dire* also permits each party the opportunity to evaluate the questions proposed by their adversary.

*United States v. Saipov*, No. S1 17-CR-722 (VSB), 2020 WL 958527, at *1 (S.D.N.Y. Feb. 27, 2020). For the reasons stated above, the court will conduct *voir dire*. Defendant's motion to conduct *voir dire* is denied, however, both parties have been ordered to provide suggested *voir dire* by June 15, 2020. (*See* Am. Sched. Order ¶ 4(iii).)

## **CONCLUSION**

Based on the foregoing, the government's motions *in limine* are GRANTED. Defendant's motions *in limine* are GRANTED in part and DENIED in part. The court will allow defendant to admit evidence to advance her position that she fully performed the therapy services she attested to in session notes and billings, but may exclude such evidence at trial if it is offered for an irrelevant or inadmissible purpose. The court denies defendant's motion to admit evidence of non-fraudulent sessions other than those sessions that the government directly

18

puts at issue during defendant's trial.  If defendant intends to argue at trial that she lacked intent to defraud based on her good faith adherence to the claim payors' instructions, she must move *in limine* to advance this argument no later than seven days from the date this Memorandum and Order is entered.  The court also reserves decision on defendant's motion to permit expert testimony.  Finally, the court will conduct *voir dire*, without permitting the parties' counsel to question prospective jurors directly, but permits counsel to submit proposed questions for the jurors as contemplated by the current scheduling order.

**SO ORDERED.**

Dated:    Brooklyn, New York
          May 15, 2020

                                          _____/s/_____
                                          Hon. Kiyo A. Matsumoto
                                          United States District Judge